**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

ROBERT PETERSON, *et al.*,                    CIVIL DIVISION

      Plaintiffs,                               2:21-cv-00078-CCW

         v.

ALLEGHENY COUNTY, *et al.*,

      Defendants.

<u>**ALLEGHENY COUNTY DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS**</u>

Pursuant to FED.R.CIV.P. 12(b)(1) and 12(b)(6), Allegheny County, Melissa Schmidt, Desiree Birdseye, Stephanie Schmidt, Erin Snyder, Margie Remele, Denise Lee, Ann Schlegel, Jacki Hoover, and Marc Cherna file this BRIEF IN SUPPORT OF MOTION TO DISMISS.

## Contents

I.   FACTS ................................................................................................................ 2

II.  ARGUMENT ...................................................................................................... 6

    1.   Parent Plaintiffs Lack Standing for Minor Children Claims ................................... 6

    2.   Statute of Limitations ............................................................................................ 8

    3.   Younger Abstention ............................................................................................... 8

    4.   Rooker-Feldman .................................................................................................. 10

    5.   Individual Defendants Entitled to Absolute Immunity ......................................... 12

       i.    Absolute Immunity – Prosecutorial ................................................................ 12

      ii.   Absolute Immunity – Witnesses ..................................................................... 12

     iii.   Absolute Immunity – Seeking and Acting Pursuant to Court Order ................. 13

     iv.   Absolute Immunity – State Claims ................................................................. 13

    6.   Individual Defendants Entitled to Qualified Immunity ........................................ 15

    7.   Lack of Personal Involvement Sufficient to Support §1983 Claims ..................... 16

    8.   Failure to State a Monell Claim Against Allegheny County................................. 17

    9.   Plaintiffs' Complaint Fails to Set Forth Viable Constitutional Claims ................. 19

       i.    14th Amendment Procedural Due Process........................................................ 19

      ii.   14th Amendment- Substantive Due Process .................................................... 21

     iii.   First Amendment Right to Association ............................................................ 22

     iv.   Fourth Amendment – Search and Seizure ....................................................... 23

      v.   Sixth Amendment Right to Counsel ................................................................ 23

vi.   Sections 1983, 1985(3), 1986 – Conspiracy ........................................................ 23

10.   Pennsylvania Constitutional Claims – No Private Right of Action........................ 24

11.   State Claims – Immunity Under Tort Claims Act ................................................. 25

i.    Intentional Infliction of Emotional Distress........................................................ 26

ii.   Abuse of Power .................................................................................................. 26

iii.  Wrongful Use of Civil Proceedings ..................................................................... 26

iv.   Trespass ............................................................................................................. 27

v.    Loss of Consortium ............................................................................................ 27

12.   Punitive Damages not Available against Allegheny County................................ 28

13.   Attorneys' Fees Not Recoverable....................................................................... 28

14.   Arguments Made by Co-Defendants................................................................... 28

III.  CONCLUSION................................................................................................................ 28

Plaintiffs filed a 124-page, 695 paragraph Complaint against various Defendants, followed by a 128-page, 715 paragraph Amended Complaint. Neither complaint complies with FED. R. CIV. P  8(a)(2)'s requirement of a "short and plain statement" of the facts entitling plaintiff to relief. Notwithstanding the excessive length of the Amended Complaint, Defendants' BRIEF IN SUPPORT OF MOTION TO DISMISS details how Plaintiffs have failed to present a viable cause of action.

## I.  FACTS

Plaintiffs have been under the jurisdiction of the Allegheny County Family Court since January 15, 2019 with a ChildLine report to the Allegheny County Office of Children Youth and Families ("OCYF") by then 7-year old Minor Plaintiff D.P. that he was repeatedly being sexually abused by Father Plaintiff, who is proceeding here under the fictitious name "Robert Peterson." D.P. reported that, "when he gets in trouble at home, he has to put his mouth on his daddy's private parts." (Ex. A; *D.P. Childline Report*; ECF #10, ¶ 54, *Amended Complaint*.)[1] [2]

---

[1] Mother Plaintiff has seven children with three different fathers.  The only father who is a party to the lawsuit is "Robert Peterson."  The oldest child is H.P.  Her biological father is J.C.  The next child is D.B.  His biological father is T.B.  Mother Plaintiff next had two children, D.C. and A.C., with J.C.  Most recently Mother Plaintiff had three children, F.P., G.P., and S.P. with Father Plaintiff "Robert Peterson."  The youngest child, S.P., was born after the Family Court action arose. (Ex. D - unredacted; Ex. G - unredacted.)

[2] This Court must consider, "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."

On January 15, 2019 Defendant OCYF caseworker Desiree Birdseye investigated the report. (ECF # 10 ¶¶57, 62, 65.) Pennsylvania law requires county CYF agencies to investigate child abuse complaints and see the child within 24 hours of receipt; ensure the immediate safety of the child and other children in the home; conduct an interview with those persons who are known to have or may reasonably be expected to have information relating to the incident of suspected child abuse. 55 Pa. Code § 3490.55. Defendant Birdseye completed this investigation that same day. OCYF labeled the ChildLine complaint "unfounded" and closed the investigation. (ECF # 10 ¶¶ 54 – 80.)

On February 6, 2019, OCYF received a second ChildLine report. (ECF # 10, ¶ 81.) This time Minor Plaintiff H.P. reported four years of sexual abuse by the Father Plaintiff "Robert Peterson." (ECF # 10 ¶ 81.) The abuse included explicit incidents of a sexual nature when H.P. was between 6 and 10 years old. The sexual abuse occurred a hundred or hundreds of times over this four-year period. (Ex. B; *H.P. Childline Report.*) H.P. reported that she "had enough and finally told Mother about it." Mother Plaintiff was reported to have responded that H.P. was "trying to make a bigger deal about this" because H.P. reported the abuse to Mother Plaintiff when H.P. was in trouble for something. H.P. reported being worried because her siblings were nearing the age she was when Father Plaintiff began his sexual abuse of her and she did not want another sibling (H.P. reported that Mother Plaintiff was pregnant at the time) to have to go through the same things H.P. did. (*Id.*)

On February 6, 2019 OCYF Defendant Birdseye investigated this second report and visited the family home. (ECF # 10 ¶ 83.) While questioning Parent Plaintiffs, it was disclosed to Defendant Birdseye that in 2017, H.P., then ten years old, sent an explicit email to an unknown recipient. (ECF # 10 ¶85.) Plaintiffs allege that H.P. told Defendant Birdseye "another dramatically enhanced version of her allegations." (ECF # 10 ¶ 13.)[3] Based on the findings of her investigation, Defendant

---

*Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). This Court is to, "consider the complaint in its entirety, as well as… documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Institutional Investors Group v. Avaya, Inc.*, 564 F.3d 242, 252 (3d Cir. 2009). This court may also consider, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

[3] Throughout the Amended Complaint Plaintiffs allege that certain Defendants continued a false narrative that Plaintiff Mother did not believe H.P. Yet, Plaintiffs' own complaint purports to state that Plaintiffs do not believe H.P's account of what happened. (*See also Exhibit K; Superior Court*

Birdseye contacted the Family Court Judge on duty on February 6, 2019 and reported her finding. The Family Court judge issued an Emergency Custody Authorization ("ECA") Order requiring the Minor Children be removed from the home.  (Ex. C, *Feb 8th ECA – A.P, D.P, F.P., G.P., H.P., D.B.*); (ECF # 10, ¶ 100.)  In issuing the ECA Orders, the Family Court found there was sufficient evidence to prove the children should be kept in shelter care and that remaining in the home of Parent Plaintiffs "is not in the best interest" of the Minor Children. (Ex. C.)  The ECA orders granted protective custody to OCYF County, authorized OCYF Caseworker to investigate further the surroundings of each child, and to take the child into custody if the child is in imminent danger from his/her surroundings. (Ex. C.)  The matter was referred to the Allegheny County District Attorney ("DA.")  The DA filed criminal charges against Father Plaintiff for sexual abuse of a child and had him arrested.  (ECF # 10 ¶197, 266.)

Under the Juvenile Protection Act, a child may be taken into "protective custody" pursuant to a court order issued according to 42 Pa.C.S.A. § 6324. "Protective custody" is a temporary solution for a child at risk of abuse. 42 Pa.C.S.A. § 6324(1). Additionally, 23 Pa.C.S.A. § 6315 provides that upon obtaining an order for protective custody – the ECA, an informal hearing must be held to determine whether to continue protective custody. This is referred to as a "shelter care hearing."  This hearing was held on February 8, 2019 before a Family Court Judge.  (ECF # 10, ¶ 108.)  The presiding Judge issued Orders finding that to allow the children to remain in the home would be contrary to their welfare. (Ex. D, *Feb 8th Shelter Care Orders - A.P, D.P, F.P., G.P., H.P., D.B.*) These Orders transferred legal custody of the Minor Plaintiffs to OCYF and physical custody to their maternal grandmother.  The Orders also directed Minor Plaintiffs to undergo forensic evaluations. *Id.*

An adjudicatory hearing took place on April 11, 2019 and was continued for a second day of testimony to May 23, 2019. (ECF # 10 ¶ 114). The Family Court found clear and convincing evidence existed to support a finding that the Minor Plaintiffs were without proper care and control.

---

*Opinion* Affirming "Mother also testified that she did not believe H.[P].'s allegations against Father [Plaintiff] were truthful and that H.[P]. had a history of lying.")

Accordingly, Minor Plaintiffs A.P., D.P., F.P., G.P., and H.P., were adjudicated dependent. (Ex. E; May 23, 2019 Orders of Adjudication A.P., D.P., F.P., G.P., and H.P.) Minor Plaintiffs were ordered to remain in the legal custody of OCYF and the physical custody of their maternal grandmother. *Id.* The Family Court ordered that Minor Plaintiff D.B., be placed in primary custody of biological father, T.B.. (Ex. F; *D.B. Custody Order*). Parent Plaintiffs appealed the Order adjudicating the Minor Plaintiffs dependent. The Family Court and the Superior Court both affirmed the decision. (Ex. J; *Family Court Memorandum Opinion*); (Ex. K; *Superior Court Memorandum Opinion*.)

On June 22, 2019, less than a month after the five Minor Plaintiffs were adjudicated dependent due to being without proper care and control, Plaintiff Mother gave birth to S.P. (ECF # 10 ¶ 201.) At the time of S.P.'s birth, Plaintiff Mother was residing with Plaintiff Father who was being investigated and facing criminal charges for the sexual maltreatment of H.C. (ECF # 10 ¶¶ 194-195.) Plaintiff Mother admits having taken anxiety medication before giving birth. (ECF No. 10 ¶201.) On June 25, 2019, caseworker Defendant Stephanie Schmidt brought these facts to the attention of the Family Court. The Family Court Judge issued an Emergency Custody Authorization Order that S.P. be removed from Mother and Father's custody. (ECF # 10 ¶ 206.); (Ex. G, *S.P. ECA Order*.) A shelter care hearing was then held within 72 hours and the Family Court determined that to allow S.P. to remain in the home would be contrary to the child's welfare. (Ex. G, S.P. *Shelter Care Order*.) The Family Court ordered Plaintiff Mother to undergo a drug screen. *Id.* The Family Court ordered OCYF to have legal custody over S.P. and placed S.P. in the physical custody of maternal grandmother. (Ex. G; S.P. *Shelter Care Order*.)

From January 15, 2019, this family has had two reports of sexual abuse by Father Plaintiff, and since February 6, 2019, this family has had an open and active Family Court proceeding. On January 18, 2021, Plaintiffs filed this lawsuit in federal court alleging various violations of state and federal law. All allegations arise from the Family Court proceeding begun over two years ago. The Allegheny County Defendants have filed a MOTION TO DISMISS. This BRIEF is filed in support.

## II. ARGUMENT

Before addressing the Plaintiffs' federal and state law claims, an overview of CYF's obligations under Pennsylvania law provides context to the facts of this case. Chapter 3490 of the Pennsylvania Code contains regulations related to child protective services in the Commonwealth of Pennsylvania. 55 Pa. Code § 3490.1. The purpose of the regulations is to implement the Child Protective Services Law ("CPSL"), 23 Pa.C.S. § 6301-6385, and to encourage more complete reporting of suspected child abuse. 55 Pa. Code § 3490.2. County CYF agencies are responsible for receiving and investigating these reports. 55 Pa. Code § 3490.5 (c). Any person may report suspected child abuse to ChildLine or a county agency. 55 Pa. Code § 3490.1(a). Some jobs, such as certain school personal and medical professionals are classified as "Required Reporters." They must report suspected child abuse to ChildLine if they have "reasonable cause to suspect that a child is a victim of child abuse." 23 Pa.C.S.A. § 6311.

ChildLine is a unit of the Pennsylvania Department of Welfare. 55 Pa. Code § 3490.4. CYF has a responsibility, under state – not federal – law, to promptly investigate the abuse reports it receives and to protect the minor children.  This includes initiating an investigation and seeing the child within 24 hours of receipt of a report.   The county agency is to begin its investigation *immediately*, if an emergency custody authorization is needed or if it cannot determine if an emergency custody authorization is needed. 55 Pa. Code § 3490.55 (*emphasis added*).

**1.  Parent Plaintiffs Lack Standing for Minor Children Claims**

This lawsuit brings multiple claims purportedly on behalf of the Minor Children.  However, the Parent Plaintiffs do not have standing under  Fed.R.Civ.P. 17(c) to present these claims. Standing is based on rights possessed by the plaintiff when suit is filed. *Crawford v. Wash. Cty. Children & Youth Servs.,* 2:06.cv1698,16, 2008 WL 239454 (W.D. Pa. Jan. 29, 2008). Federal law requires that every action "be prosecuted in the name of the real party in interest." Fed. R Civ. P. 17(a)(1). Where the party in interest is a minor, Rule 17(c)(1) provides that a representative, such as a general guardian, committee, conservator, or like fiduciary may sue on a minor's behalf.  Although a parent-guardian may sue on behalf of a minor pursuant to Fed.R.Civ.P.

17(c), it is not permitted where the parent's interests are not aligned with those of the child. *Gardner by Gardner v. Parson*, 874 F.2d 131, 13 Fed. R. Serv. 3d 834 (3d Cir. 1989) (Finding a conflict between an advocate's and a child's interest such that the appointment of a friend for the child was warranted.) *See also Dolin on Behalf of N.D. v. West*, 22 F. Supp. 2d 1343 (M.D. Fla. 1998), summarily aff'd, 207 F.3d 661 (11th Cir. 2000) *referencing Johns v. Dep't of Justice of the United States*, 624 F.2d 522 (5th Cir. 1980) (Finding that parent's interest did not align with those of the child where visitation rights were terminated by family court.)

Plaintiffs filed this action on January 18, 2021. (ECF # 1.) At that time, the Parent Plaintiffs had legal custody of only one of the seven Minor Plaintiffs, S.P. (Ex. H 12.20.20 *Permanency Review Orders*.) Legal custody of five of the children was with CYF.[4] Minor Plaintiff D.B. was then, and remains now, in the physical and legal custody of his father. (Ex. F; *DB Custody Order*.) D.B.'s father is not a plaintiff in this lawsuit and did not bring suit on D.B.'s behalf. (*See* Docket filings generally.)[5] Parent Plaintiffs have no authority to bring suit purportedly by Minor Plaintiffs H.P., D.P., A.P., F.P., and G.P. must be dismissed.

Additionally, Parent Plaintiffs interests do not align with interests of any of the Minor Plaintiffs barring Parent Plaintiffs from bringing this action on their behalf. The Family Court has already held dependency hearings on all seven of the Minor Plaintiffs. After which, the Family Court adjudicated five of the Minor Plaintiffs dependent, and a sixth (D.B.) placed in the primary legal and physical custody of his father. At a dependency hearing, "[t]he trial court must focus on the child and determine the goal with reference to the child's best interests, not those of the parents. Safety, permanency, and well-being of the child must take precedence over all other considerations. *In re S.B.*, 943 A.2d 973, 978 (Pa. Super. 2008). This lawsuit is premised on the notion that every one of the Defendants as well as the State Courts were/are wrong in the actions taken in working towards the goal of protecting the Minor Plaintiffs from abuse. Parent Plaintiffs' interests do not

---

[4] These are Minor Plaintiffs H.P., D.P., A.P., F.P., and G.P. (Ex. E; 5/28/2019 Dependency Orders.)
[5] Additionally, Minor Plaintiff H.P. was then, and is now, in physical custody of her maternal grandmother. (Ex. I; 3/21 *Permanency Review Orders*.)

align with those of Minor Plaintiffs.   Accordingly, Parent Plaintiffs do not have standing under Fed.R.Civ.P. 17(c) to pursue the Minor Plaintiffs' claims.  The claims should be dismissed.

**2.   Statute of Limitations**

The statute of limitations for claims brought under § 1983 follows the state law statute of limitations for torts. *Owens v. Okure,* 488 U.S. 235, 249–50, 109 S.Ct. 573 (1989); *Sameric Corp. Of Delaware, Inc. v City of Philadelphia,* 142 F.3d 582, 599 (3d Cir. 1998). In Pennsylvania that is two years. 42 Pa.C.S.A. § 5524. In the Third Circuit, a statute of limitations defense may be raised in a Rule 12(b)(6) motion to dismiss, if the complaint facially shows that it was filed after the limitations period had passed. *Weiss v. Bank of Am. Corp.,* 153 F. Supp. 3d 831, 837–38 (W.D. Pa. 2015), citing *Robinson v. Johnson,* 313 F.3d 128 (3d Cir.2002); *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 n. 1 (3d Cir. 1994).

The first ChildLine report was filed on January 15, 2019. Plaintiffs agree that all action with regard to this report occurred on that day.  (ECF #10, ¶¶ 54-80, *Amended Complaint.*)  Plaintiffs did not file suit until January 18, 2021, (ECF #1, *Complaint)* making the January 15, 2019 claims outside the statute of limitations.  All §1983 and state law claims stemming from alleged acts taken by the County Defendants for the January 15, 2019 ChildLine Report must be dismissed with prejudice.

**3.   Younger Abstention**

The *Younger* abstention doctrine applies here. *Younger* abstention applies when: (1) the state proceedings are judicial in nature, (2) the proceedings implicate important state interests, and (3) the federal plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges. *Miller v. Mitchell,* 598 F.3d 139, 145–46 (3d Cir. 2010). The "fair administration of child custody and parental rights proceedings" is undoubtedly an important state interest. *McDaniels v. New Jersey Div. of Youth & Family Servs.,* 144 F. App'x 213, 215 (3d Cir 2005) (citing *Moore v. Sims,* 442 U.S. 415, 427 (1979). Indeed, it is common for federal courts to apply *Younger* abstention in suits against child welfare agencies such as CYF where child-custody determinations are still being worked out in state court. *E.g., Shallenberger v. Allegheny Cnty,* No. CIV 2:20-cv-00073-NR, 2020 WL 1465853, at *5 (W.D. Pa. March 26, 2020).

Here Parent Plaintiffs and Minor Plaintiffs H.P, D.P., A.P., and D.B. are activity involved in Family Court child-custody and dependency proceedings. (Ex. I; *3/21 Permanency Review Orders*). Plaintiffs have an adequate and available forum in Family Court to bring the grievances they raise in this federal lawsuit.  In facts, Plaintiffs have already done so.  For example, Mother Plaintiff appealed the Family Court dependency rulings and raised before the Pennsylvania Superior Court the same Constitutional claims brought in this federal lawsuit. She asserted in her statement of errors complained of on appeal:

> The court committed an error of law and an abuse of discretion by allowing witnesses to testify regarding hearsay statements made by H.C., instead of requiring H.[P]., to testify, and without finding that H.[P]. was unavailable to testify, which further unconstitutionally infringed upon Appellant's rights to due process and fundamental fairness.

> The court committed an error of law and an abuse of discretion, and violated Appellants' rights to due process and fundamental fairness, to the extent that it made a dependency finding based on allegations outside of the scope of the dependency petition without providing adequate notice to Appellants.

(Ex. J, *J. Woodruff's Opinion 5/23/19 Appeal; see also* Ex. K, *Superior Court Opinion*).

> The court committed an error of law and an abuse of discretion, and violated Appellant's right to due process and fundamental fairness, when it failed to conduct permanency review hearing within six months of the previous permanency review hearing.

> The court committed an error of law and an abuse of discretion, and violated Appellant's right to due process and fundamental fairness, when it failed to require CYF to produce its complete case file and subsequently allowed CYF to testify as to the contents of the file.

> The court committed an area of law and an abuse of discretion, and violated Appellant's right to due process and fundamental fairness, when it failed to issue a requested subpoena for OCYF case file pursuant to 42 PA CS§ 6333.

> The court committed an error of law and an abuse of discretion, and violated Appellant's right to due process and fundamental fairness, when it admitted the medical records of [mother] into evidence.

> The court committed an error of law and an abuse of discretion, and violated Appellant's right to due process and fundamental fairness, when it made a determination of dependency before all testimony and evidence was presented to the Court.

(Ex. L, *J Woodruff's Opinion 8/28/20 Appeal*).  The outcome of the state court proceeding is of no significance under *Younger*.  What matters is that Plaintiffs had a chance to raise their challenges, not whether they actually did so or succeeded.  *Shallenberger v. Allegheny Cnty*, No. CIV 2:20-cv-00073-NR, 2020 WL 1465853, at *5 (W.D. Pa. March 26, 2020).  *See also Lazaridis v. Wehmer*, 591 F.3d 666, 671 (3d Cir. 2010) ("[A]lthough [plaintiff] did not raise his federal constitutional claims in state court and would likely be precluded from doing so now, this does not save his claim.").  This Court's taking jurisdiction of this case would improperly interfere with the Family Court proceeding.  This Court should abstain at this time.

**4.  Rooker-Feldman**

The *Rooker–Feldman* doctrine bars lower federal courts from exercising jurisdiction over a case that is the functional equivalent of an appeal from a state court judgment. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303 (1983). Under *Rooker-Feldman*, federal courts "lack jurisdiction over suits that are essentially appeals from state-court judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 165 (3d Cir. 2010).  The *Rooker-Feldman* doctrine applies when:

(1) the plaintiff lost in state court;
(2) the plaintiff complains of injuries caused by state-court judgments;
(3) the judgments were rendered before the federal lawsuit was filed; and,
(4) the plaintiff asks the federal district court to review and reject the state court judgment.

*Id.* at 166.  In this particular case Plaintiffs cannot overcome any, let alone all four, of the *Rooker-Feldman's* requirements.

*Rooker-Feldman* doctrine applies to federal lawsuits implicating child-custody decisions. *E.g., Young v. Dubow*, 411 F. App'x 456, 458 (3d Cir. 2011) (holding that *Rooker-Feldman* applied when the federal complaint stemmed from an adverse state-court custody decision); *Marran v. Marran*, 376 F.3d 143, 150–51 (3d Cir. 2004) (concluding that the district court lacked jurisdiction under *Rooker-Feldman* over claims that were inextricably intertwined with the state-court adjudication of a child-custody matter, in which a ruling for the plaintiff would have necessarily required a finding that the state court erred in its custody decision).

A federal lawsuit is the functional equivalent of an appeal from a state court judgment when:

(1) the claim was actually litigated before the state court; or,
(2) the claim is inextricably intertwined with the state adjudication.

*ITT Corporation v. Intelnet International Corporation,* 366 F.3d 205, 210 (3d Cir. 2004). Almost any claim that is actually litigated will also meet the inextricably intertwined test. *Id.* A claim is inextricably intertwined with the state court proceeding when "federal relief can only be predicated upon a conviction that the state court was wrong." *Parkview Assoc. v. City of Lebanon,* 225 F.3d 321, 325 (3d Cir. 2000). "*Rooker–Feldman* applies only when in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered, or must take action that would render the state judgment ineffectual." *FOCUS v. Allegheny County Court of Common Pleas,* 75 F.3d 834, 840 (3d Cir. 1996).

To determine whether a particular claim for federal relief is inextricably intertwined with a state court decision, this Court looks at "the questions of state law that the state court was required to reach in order to render its decision." *Desi's Pizza v. City of Wilkes–Barre,* 321 F.3d 411, 421 (3d Cir. 2003). As noted in the *Younger* section, *supra,* many of the claims asserted here have already been litigated in Family Court. This shows that the two actions are "inextricably intertwined."

Plaintiffs assert in their Amended Complaint that the County Defendants had no basis to remove the Minor Children from their care. This is not supported by the record. The Family Court issued orders authorizing the removal of the children through ECAs. The Family Court adjudicated five of the Minor Plaintiffs dependent; gave legal and physical custody of one Minor Plaintiff (D.B.) to his biological father; determined custody; established visitation; removed father and mother from the family residence; and, among many other things, set requirements of counseling and supervision for all Plaintiffs. (Ex. C, D, E, F, G, H, I *Family Court Orders.*). Mother Plaintiff appealed the dependency orders to the Superior Court. The Superior Court affirmed the Family Court orders. (Ex. K, *Superior Court Opinion Affirming Dependency Orders.*)

The Juvenile Act permits a court to adjudicate a child dependent if the child is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. 42 Pa.C.S. § 6302(1). "[T]he

burden of proof in a dependency proceeding is on the petitioner to demonstrate by clear and convincing evidence that a child meets that statutory definition of dependency." *In re J.C.*, 5 A.3d 284, 289 (Pa. Super. Ct. 2010).  The Family Court adjudicated the Minor Children dependent, thus finding the Minor Plaintiffs were without proper parental care or control at the time. This decision was appealed to the Superior Court and was affirmed.   It is now a final determination.

All of *Rooker-Feldman's* prongs exist. This Court cannot find that the Allegheny County Defendants' actions unconstitutional without undermining the Family Court decisions. Plaintiffs' federal claims are inextricably intertwined with those decisions. They must be dismissed.

**5. Individual Defendants Entitled to Absolute Immunity**

*i. Absolute Immunity – Prosecutorial*

Under its historical and functional approach, the Supreme Court has held that certain officials "functioning as integral parts of the judicial process" are absolutely immune from civil suits brought under § 1983. *McArdle v. Tronetti*, 961 F.2d 1083, 1084 (3d Cir. 1992). Unlike a qualified immunity analysis, which may involve a factual inquiry,... absolute immunity can be addressed as a threshold issue. *B.S. v. Somerset Cty.*, 704 F.3d 250, 261 n.22 (3d Cir. 2013). Public officials who perform "special functions" may be entitled to absolute immunity. *Id.* at 261. Justifications for according absolute immunity to prosecutors also apply to child welfare employees. *Ernst v. Child & Youth Servs. of Chester Cty.*, 108 F.3d 486, 496-497 (3d Cir. 1997). Absolute immunity for child welfare employees is appropriate when the employee formulates and presents recommendations to the court regarding a child's custody determination. *B.S.*, 704 F.3d at 262–63. Not only does absolute immunity protect caseworkers' judicial recommendations, but it also protects the " 'gathering and evaluation of information' to formulate those recommendations and to prepare for judicial proceedings." *Id.* at 269( internal citation omitted.).

*ii. Absolute Immunity – Witnesses*

Witnesses are absolutely immune for their testimony, including government officials who testify about their official duties. *Briscoe v. LaHue*, 460 U.S. 325, 326, 103 S.Ct. 1108 (1983). This absolute        immunity        extends        to        caseworkers        who        testify        in        dependency

proceedings. *Pelino v. HensGreco*, Civ. No. 161140   2017 WL 321494   *4   (W.D. Pa. Jan. 23, 2017) (holding that CYF child welfare workers were immune from claims based on their testimony at the dependency hearings,) *aff'd Pelino v. Hens–Greco, 693 Fed.Appx.* 104, 107 (3d Cir. 2017).

### iii. Absolute Immunity – Seeking and Acting Pursuant to Court Order

The individual Allegheny County Defendants are absolutely immune for any alleged actions taken in seeking a court order and actions taken pursuant to a court order. *B.S. v. Somerset Cty.*, 704 F.3d at 264–271 (holding that DCP&P caseworkers were absolutely immune for actions taken in seeking a court order transferring custody from one parent to another). *Hamilton v. Leavy*, 322 F.3d 776, 782–83 (3d Cir. 2003) ("[A]ction taken pursuant to a facially valid court order receives absolute immunity from § 1983 lawsuits for damages.")

### iv. Absolute Immunity – State Claims

The individual Allegheny County Defendants are also absolutely immune for all the pendent state claims. Pennsylvania, like many other jurisdictions, recognizes a judicial privilege providing immunity for communications which are made in the regular course of judicial proceedings and are material to the relief sought. *Bochetto v. Gibson,* 860 A.2d 67, 71 (Pa. 2004). The privilege covers statements by a party, a witness, an attorney, or a judge. *Binder v. Triangle Publications, Inc.,* 275 A.2d 53 56 (Pa. 1071) (explaining statements by party, witness, counsel or court made during any stage of judicial proceedings are absolutely privileged); *Milliner v. Enck,* 709 A.2d 417 (Pa. Super. Ct. 1998) (stating communication is absolutely privileged when published prior to judicial proceeding as long as communication is somehow related to subject matter of litigation.) . Furthermore, the privilege is absolute, meaning that, where it attaches, the declarant's intent is immaterial even if the statement is false and made with malice. *Bochetto,* 860 A.2d at 71 n. 12. Judicial privilege is not limited to statements made in open court but encompasses pleadings as well. *Greenberg v. Aetna Ins. Co.,* 235 A.2d 576, 577 (Pa. 1967). The privilege extends further to "even less formal communications such as preliminary conferences and correspondence between counsel in furtherance of the client's interest," as well as to statements made to law enforcement officials for the purpose of persuading those officials to initiate criminal proceedings. *Pawlowski*

*v. Smorto,* 588 A.2d 36, 41, 43 (Pa. Super. Ct. 1991); *Adams v. Peck,* 288 Md. 1, 415 A.2d 292, 294 (1980) (expressing that the privilege should extend to potentially defamatory statements published in documents which are prepared for possible use in connection with a pending judicial proceeding but which have not yet been filed).

> A witness is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding or as a part of a judicial proceeding in which he is testifying, if it has some relation to the proceeding.

Restatement (Second) of Torts § 588 (1977)[6]; § 587 (parallel provision applicable to parties).

v.   *Immunity Under the Child Protective Services Law*

The Pennsylvania Child Protective Services Law also provides civil liability for "any official or employee of a county agency who refers a report of suspected abuse to law enforcement authorities or provides services under [the CPSL]". 23 Pa.C.S.A. § 6318(a). Section 6318 provides additional immunity for county agency officials and employees for their activities relating to "cooperating with an investigation" and from "testifying in a proceeding arising out of an instance of suspected child abuse". 23 Pa.C.S.A. § 6318(a). CYF employees are entitled to a presumption of good faith in their activities, which must be judged pursuant to an objective standard rather than by alleged motives or allegations of maliciousness. 23 Pa.C.S.A. § 6318(b); *Jones v. Snyder,* 714 A.2d 453 (Pa.Super. Ct. 1998).

All of Plaintiffs' claims against the individual County Defendants are premised on alleged actions taken by them that fall within one or more of the above grants of absolute immunity:

(1)  in a prosecutorial capacity in preparation for or during judicial proceedings;
(2)  while testifying during a Court proceeding;
(3)  pursuant to a valid Court Order; and/or
(4)  statements made to law enforcement.

(*See* ECF #10, *generally, Amended Complaint.*) All of the individual Allegheny County Defendants are entitled to absolute immunity on all federal and state claims.

---

[6] Restatement 2d Torts § 588 has been adopted in Pennsylvania. *Doe v. Wyoming Valley Health Care Sys., Inc.,* 987 A.2d 758, 766 (Pa. Super. Ct. 2009). Section 587 has likewise been adopted in Pennsylvania. *Pawlowski . Smorto,* 588 A.2d 36, 42 (Pa. Super. Ct. 1991).

**6. Individual Defendants Entitled to Qualified Immunity**

Even if the Allegheny County Individual Defendants were not entitled to absolute immunity, they are entitled to qualified immunity. State actors, including child welfare agency officials, *see, e.g., Bayer v. Monroe Cnty. Children & Youth Servs.*, 577 F.3d 186 (3d Cir. 2009), are entitled to qualified immunity as to federal claims "unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Dougherty v. Sch. Dist. of Philadelphia*, 772 F.3d 979, 986 (3d Cir. 2014) (citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). The qualified immunity analysis is two-pronged:

> (1) whether the plaintiff alleged the deprivation of a constitutional right; and,
> (2) whether the right was clearly established at the time of the conduct.

*Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Government officials, such as child welfare caseworkers, are "generally shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). [R]easonableness is judged against the backdrop of the law at the time of the conduct." *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596 (2004) (per curiam). Reasonable, must be not be judged from the perfect view of hindsight. *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018).

If the first requirement – violation of a constitutional right – does not exist, the case goes no further because the plaintiff has failed to state a claim upon which relief can be granted. *Saucier v Katz*, 533 U.S. 194, 121 S.Ct. 2151 (2001). If the case proceeds to the second requirement – clearly established - the inquiry must be undertaken in the specific context of the case and not as a broad general proposition. *Id.* Specificity is important. *Kisela*, 138 S. Ct. at 1152–53. Courts not to analyze prior precedent with such a broad brush as to make the concept of clearly established law so vague as to be essentially meaningless. *Id.*

Here, Plaintiffs' allegations against the Allegheny County Defendants fail to establish that any constitutional rights were violated. A review of the Family Court records show that the County Defendants acted upon a ChildLine report, as they are authorized to do under the CSPL. The matter

was turned over to a Family Court judge who made adjudications and placed this family into the services of Allegheny County CYF.  The Family Court records show that while the family was difficult and the Parent Plaintiffs made it difficult to proceed, no actions by the Allegheny County Defendants rose to a constitutional level and no constitutional rights were violated.   Thus, the claims against the individual defendants go no further.

Even if this Court were to consider the second prong of  qualified immunity – clearly established – the case falls at this point.  The Family Court record shows that the individual defendants followed the CPSL and acted pursuant to Family Court orders.  There is no clearly established federal law that has been violated.  The individual Allegheny County Defendants are entitled to qualified immunity.

**7.   Lack of Personal Involvement Sufficient to Support §1983 Claims**

Plaintiffs' §1983 claims brought against individuals Melissa Schmidt, Erin Snyder, Margie Remele, Denise Lee, Ann Schlegel, Jacki Hoover, and Marc Cherna must be dismissed for lack of personal involvement.  Claims for money damages for violation of constitutional rights cannot be based on vicarious liability or *respondeat superior;* "to state such a cause of action against a government official under Section 1983, the plaintiff must allege that the individual defendant was ***personally involved*** in the alleged wrongs. *Ashcroft v. Iqbal,* 556 U.S. 662, 676, 129 S.Ct. 1937 (2009) (emphasis added). Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each government-official defendant, through the official's own *individual* actions, has violated the Constitution. *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988) (emphasis added). Liability in claims asserted under § 1983 requires ***personal involvement*** in the alleged wrongs.  *Hatfield v. Berube,* 714 F. App'x 99, 102 (3d Cir. 2017) (emphasis added).  Allegations of a defendant's participation or actual knowledge and acquiescence in the alleged wrongdoing must be made "with appropriate particularity." *Rode,* 845 F.2d at 1207.

Plaintiffs have failed to sufficiently plead how each individual Allegheny County Defendant was personally involved in each of the §1983 claims filed against them. It is not discernable from the Amended Complaint which allegations are being levied against every

individual defendant. The counts set forth in the Amended Complaint make vague conclusions and allegations towards all Defendants collectively without the appropriate factual support, that each individual Defendant had personal knowledge and personal involvement.  Accordingly, these claims against the individual Allegheny County Defendants must be dismissed.

### 8.   Failure to State a Monell Claim Against Allegheny County

Plaintiffs' Amended Complaint asserts constitutional claims against Allegheny County through 42 U.S.C. § 1983. Section 1983 is an enabling statute which does not create any substantive rights. Rather, it provides private citizens with a remedy for the violation of federal constitutional or statutory rights by a state actor. *Gruenke v. Seip,* 225 F.3d 290, 298 (3d Cir. 2000). To state a claim under Section 1983, plaintiffs must allege that a defendant acting under color of state law deprived plaintiffs of a federal constitutional or statutory right. *Gruenke,* 225 F.3d at 298.   Federal law requires that in order to hold a municipal government liable for a constitutional violation of someone's rights, more is required than just pleading a constitutional violation. *Monell v. Dep't of Soc. Serv.,* 436 U.S. 658, 692 (1978).   *Monell* requires that Plaintiff establish 1) a constitutional violation, 2) a policy or custom of the municipality, and 3) a causal connection between the two. *Berg v. County of Allegheny,* 219 F.3d 261, 275 (3d Cir. 2000) (*emphasis added*) (a Section 1983 plaintiff, "must demonstrate that the violation of his rights was caused by either a *policy* or a *custom* of the municipality.")

"Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *McTernan v. City of York, PA,* 564 F.3d 636, 658 (3d Cir. 2009) (quoting *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1480 (3d Cir. 1990)).  A custom has been characterized as a practice that, while not formally adopted as a municipal policy, is so pervasive that it carries with it, "the force of law." *Natale,* 318 F.3d at 584 (quoting *Bd. of County Commissioners of Bryan County, Okl. v. Brown,* 520 U.S. 397, 404 (1997)).  If a municipal policy or custom has been adequately identified, a plaintiff must then demonstrate that, "through its *deliberate* conduct, the municipality was the '*moving force*' behind the injury alleged." *Berg v. County of Allegheny,* 219 F.3d at 275 (emphasis added).  "If . . . the

policy or custom does not facially violate federal law, causation can be established only by 'demonstrat[ing] that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice.'" *Id.* (quoting *Bd. of County Commissioners of Bryan County, Okl. v. Brown,* 520 U.S. 397, 407 (1997)). As such, "[t]he burden on a plaintiff seeking to establish municipal liability in a § 1983 claim is quite high." *King v. County of Gloucester,* 302 Fed. Appx. 92, 99 (3d Cir. 2008).

Plaintiffs have not sufficiently pled facts to support the assertion that a custom or policy of Allegheny County was the moving force behind any of their §1983 claims. Count XII of Plaintiffs' Amended Complaint sets forth the alleged municipal policies and customs of Allegheny County. Plaintiffs refer to the allegations in paragraphs ¶¶559(a-j) as "policies" but have not cited to any specific Allegheny County written policy that would reflect any of the assertions made in these paragraphs. Liability can attach only if Plaintiffs can successfully "identify a custom or policy, and specify what exactly that custom or policy was," *McTernan v. City of York, Pa.,* 564 F.3d 636, 658 (3d Cir. 2009), and that "bare recitation of the words 'custom and/or policy,'" *Pittman v. Martin,* 569 F. App'x 89, 92 (3d Cir. 2014), or "vague assertions of policy are not sufficient to impose liability under Monell," *Tripodi v. N. Coventry Twp.,* 616 F. App'x 521, 523 (3d Cir. 2015) (citing *Groman v. Twp. of Manalapan,* 47 F.3d 628, 637 (3d Cir. 1995)). *See also Bayer v. Monroe Cty. Children & Youth Servs.,* 414 F. App'x 431, 437 (3d Cir. 2011) (rejecting a conclusory allegation that defendant County has a policy, custom, or practice of 'seiz[ing] minor children from their parents without prior judicial authorization, and without any reasonable basis to believe such a seizure is necessary to protect children from imminent harm'" as insufficient to state a claim).

All purported polices or customs stated within Count XII refer to alleged actions specifically taken within the context of Plaintiffs' own dependency proceedings. Plaintiffs have failed to plead any facts to support that any of the alleged customs were so persistent and widespread as to practically have the force of law. *Connick v. Thompson,* 563 U.S. 51, 60, 131 S.Ct. 1350, 1359 (2011). Moreover, Plaintiffs have not provided any facts to support an assertion that Allegheny County took any of the alleged actions outside the context of Plaintiffs' own Family Court and dependency

matter.   Furthermore, Plaintiffs have failed to plead facts sufficient to show that any alleged Allegheny County policy or custom was the moving force behind the injury alleged.

Plaintiffs reference a failure to train in a general and conclusory fashion in certain portions of the Amended Complaint.  This is not enough to plead failure to train.  In order to establish liability on a failure-to-train claim under § 1983, a plaintiff "must identify a failure to provide specific training that has a causal nexus with [his] injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." Reitz v. Cty. of Bucks, 125 F.3d 139, 145 (3d Cir. 1997) Establishing municipal liability on a *Monell* claim for inadequate training is difficult. *Reitz v. County of Bucks,* 125 F.3d 139, 145 (3d Cir. 1997). Generally, deficient training can only amount to the requisite deliberate indifference, "where the failure to train has caused a pattern of violations." *Berg v. County of Allegheny,* 219 F.3d 261, 276 (3d Cir. 2000).

Plaintiffs incorrectly assert in Count XII that certain policies and customs of the "Court" are attributable to Allegheny County.  (ECF #10, ¶¶ 557, 559, *Amended* Complaint.) The Pennsylvania Constitution identifies all state courts as part of the Commonwealth of Pennsylvania. Pa. Const. Art. V §§ 1, 5, 6(c), 10(a). The term "Commonwealth government" includes "the courts and other officers or agencies of the unified judicial system." 42 Pa. C.S. §102.  *See also Benn v. First Judicial District,* 426 F.3d 233, 239-40 (3rd Cir. 2005); Callahan v. City of Philadelphia, 207 F.3d 668, 672 (3d Cir. 2000) (finding "[a]ll courts and agencies of the unified judicial system . . . are part of 'Commonwealth government' and thus are state rather than local agencies"). Accordingly, Allegheny County cannot be held liable for the alleged policies and customs of the Family Court. All counts asserting §1983 claims against Allegheny County must be dismissed with prejudice.

**9.  Plaintiffs' Complaint Fails to Set Forth Viable Constitutional Claims**

Plaintiffs' Amended Complaint also fails to set forth viable federal constitutional claims.

*i.   14th Amendment Procedural Due Process*

For a procedural due process claim to survive a motion to dismiss, a plaintiff is required to plead facts supporting allegations that:

(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property;' and,

(2) the procedures available to him did not provide 'due process of law".

*Alvin v. Suzuki,* 227 F.3d 107, 116 (3d Cir. 2000). If there is a process that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants. *McDaniels v. Flick,* 59 F.3d 446, 460 (3d Cir. 1995).

Due process is implicated when protected interests such as a parent's liberty interest "in the custody, care and management of [his or her] children" are subjected to intrusion by the state. *Croft v. Westmoreland Cnty. Children & Youth Servs.,* 103 F.3d 1123, 1125 (3d Cir. 1997). An individual must ordinarily be afforded "the opportunity to be heard 'at a meaningful time and in a meaningful manner'" before any such intrusion. *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893 (1976) (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187 (1965)). The extent of that obligation is, a flexible one, based upon a balance of several factors:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* at 335, 96 S.Ct. 893.

Thus, when a parent complains of state action intruding on the "parent-child relationship," the parent's interest must "be balanced against the state's interest in protecting children suspected of being abused." *Miller,* 174 F.3d at 373. While the question of what constitutes due process is necessarily rooted in the circumstances of a given case, it is axiomatic that at least some process is required when a "state seeks to alter, terminate, or suspend a parent's right to the custody of [her] minor children." *McCurdy v. Dodd,* 352 F.3d 820, 827 (3d Cir. 2003).

The Family Court record shows that hearings were held before a state court judge, and the Family Court Judge issued ECAs in every instance <u>before</u> the Minor Children were removed. This record also shows that before the Minor Children were adjudicated dependent the Family Court Judge held a hearing. This record shows that the requirements of federal procedural due process

were satisfied. Paragraphs ¶¶422(b-d) within Count I are allegations directed at the Family Court Judge's scheduling procedures.  These are issues beyond Allegheny County Defendants control. Accordingly, Plaintiffs have failed to state a claim of 14th Amendment due process violation against Allegheny County Defendants.  The claim must be dismissed with prejudice.

ii. *14th Amendment- Substantive Due Process*

Counts four and seven allege that Defendants violated 14th Amendment Rights.  They provide no specificity as to what aspect of substantive due process was allegedly violated.  For the purpose of this motion the Allegheny County Defendants' best guess is that Plaintiffs mean to allege a substantive due process violation of the right to familial integrity.

The Supreme Court has recognized a "fundamental liberty interest of natural parents in the care, custody, and management of their child." *Santosky v. Kramer,* 455 U.S. 745, 753 (1982). However, this Fourteenth Amendment liberty interest must be balanced against the government's compelling interest to protect children, and "does not include a right to remain free from child abuse investigations." *Croft v. Westmoreland County Children & Youth Servs.,* 103 F.3d 1123, 1125 (3d Cir. 1997).  In the context of a child welfare suit, a substantive due process claim requires "decision-making by a social worker that is so clearly arbitrary" that it "shock[s] the conscience." *B.S. v. Somerset Cty.,* 704 F.3d 250, 267 (3d Cir. 2013) (quoting *Miller v. City of Philadelphia,* 174 F.3d 368, 375-76 (3d Cir. 1999) ("[A] social worker acting to separate parent and child … rarely will have the luxury of proceeding in a deliberate fashion … As a result, … the standard of culpability for substantive due process purposes must exceed both negligence and deliberate indifference and reach a level of gross negligence or arbitrariness that indeed '**shocks** the **conscience**.'").  This requires that a plaintiff must demonstrate that the government action "exceed[ed] both negligence and deliberate indifference, and reach[ed] a level of gross negligence or arbitrariness that indeed 'shocks the conscience.' " *Id.* at 375–76. When a government actor possesses "some reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse," his or her removal of a child from the parents' custody does not constitute an infringement on the parents' rights to familial integrity. *Croft,* 103 F.3d at 1126.

The facts establish there is no conscious-shocking government action.  The Allegheny County Defendants became involved in this case because of reports that two of the Minor Children disclosed that they had been the victim of repeated sexual assault and abuse by Husband Plaintiff. These are serious allegations that require investigation and action not only to protect the two children, but also the other Minor Children who are potentially exposed to Husband Plaintiff.  The Allegheny County Defendants did not act on their own.  The Family Court record shows that this matter was reviewed by the court the same day each report was made and the Court ordered that all the children be taken into immediate protective custody after the second report.  The Family Court later issued more permanent orders removing both Mother Plaintiff and Husband Plaintiff from the home because of concerns the Court had over all Minor Plaintiffs' wellbeing. At the time S.P. was born and adjudicated dependent by the Family Court, Husband Plaintiff had been arrested and the DA had filed criminal charges against him in the Court of Common Pleas of Allegheny County for the alleged sexual abuse of one of H.P.

Given these facts, the Allegheny County Defendants had considerable evidence to give rise to a reasonable suspicion that the Minor Children were in imminent danger of abuse when seeking ECAs, at the Shelter Hearing stage, and at the dependency adjudication stage.  This reality is supported by the fact that the Family Court adjudicated the children dependent, removed both parents from the home, and the Superior Court affirmed those decisions.  The actions of the Allegheny County Defendants cannot shock any reasonable conscious.  *B.S. v. Somerset County, 704 F.3d 250, 267–68 (3d Cir. 2013)* (applying *Miller* and holding that child welfare worker's actions in obtaining court order and removing daughter from mother's custody did not "shock the conscience").  The substantive due process claim must fail.

### iii. First Amendment Right to Association

Plaintiffs allege a 1st Amendment claim for a right to "intimate association with family members."  However, such a right is anchored in the 14th not the 1st Amendment. *Clayworth v. Luzerne Cty.*, 513 F. App'x 134, 137 (3d Cir. 2013) (citing *Roberts v. U.S. Jaycees,* 468

U.S. 609, 617–20 (1984) ) (grounding intimate association claim by a father who sought custody of his child in the 14th, not 1st, Amendment.). The First Amendment claim fails with prejudice.

### iv. Fourth Amendment – Search and Seizure

Plaintiff Parents claim that Defendants violated their 4th Amendment rights with improper searches of the family home. The only instance where Plaintiffs allege an Allegheny County Defendant entered the home without full consent is on January 15, 2019. (ECF #10, ¶ 86, *Amended Complaint.*) This claim is barred by the statute of limitations. *See* Statute of Limitations Section, *supra*. Even if this claim were not time-barred, Allegheny County's interest in investigating alleged child abuse outweighs the parents' 4th Amendment interests. *Wyman v. James,* 400 U.S. 309, 91 S.Ct. 381 (1971) (public interest in the welfare of children: "There is no more worthy object of the public's concern.") The 4th Amendment claim fails.

### v. Sixth Amendment Right to Counsel

The 6th Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the assistance of counsel for his defense." U.S. Const. amend. VI. The 6th Amendment does not govern civil cases. *Turner v. Rogers,* 564 U.S. 431, 434, 131 S.Ct. 2507, 2516 (2011); s*ee also McMickle v. U.S.,* 530 F. App'x 139 (3d Cir. 2013) (citing *Lu v. Ashcroft,* 259 F.3d 127, 131 (3d Cir. 2001)(6th Amendment guarantee to effective counsel does not apply in civil cases.) Plaintiff H.P.'s 6th Amendment claim must be dismissed with prejudice.

### vi. Sections 1983, 1985(3), 1986 – Conspiracy

In order to set forth a §1983 or §1985(3) cognizable conspiracy claim, a plaintiff cannot rely on broad or conclusory allegations[7]. *D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch.,* 972 F.2d 1364, 1377 (3d Cir. 1992); *Rose v. Bartle,* 871 F.2d 331, 366 (3d Cir. 1989). A civil rights conspiracy claim is sufficiently alleged if the complaint details the following: (1) the conduct that violated the plaintiff's rights; (2) the time and the place of the conduct; and (3) the identity of the officials responsible for the conduct. *Oatess v. Sobolevitch,* 914 F.2d 428, 432 n. 8 (3d Cir. 1990).

---

[7] This same specificity standard applies to Plaintiffs' civil conspiracy claim brought before this Court in Count 28 of the Amended Complaint.

The essence of a conspiracy is an agreement or concerted action between individuals. *D.R. by L.R.,* 972 F.2d at 1377. A plaintiff must therefore allege with particularity and present material facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive plaintiff of a protected federal right. .*D .R. by L.R.,* 972 F.2d at 1377; *Rose,* 871 F.2d at 366. Where a civil rights conspiracy is alleged, there must be specific facts in the complaint which tend to show a meeting of the minds and some type of concerted activity. *Deck v. Leftridge,* 771 F.2d 1168, 1170 (8th Cir. 1985). A plaintiff cannot rely on subjective suspicions and unsupported speculation. *Young v. Kann,* 926 F.2d 1396, 1405, n. 16 (3d Cir. 1991). Furthermore, to state a claim under § 1985(3), a plaintiff must allege: **(1)** a conspiracy; **(2)** motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; **(3)** an act in furtherance of the conspiracy; and **(4)** an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. *Lake v. Arnold,* 112 F.3d 682, 685 (3d Cir. 1997).

Plaintiffs do not plead any "conspiracy" above the speculative level. Plaintiffs present broad and conclusory language asserting that Defendants have conspired to deprive them of constitutional rights without identifying any conduct or act in furtherance of a conspiracy.  Plaintiffs §1983 and §1955(3) conspiracy claims must be dismissed.  Consequently, Plaintiffs cannot establish violation of §1986.  A claim under §1986 cannot exist when plaintiff has failed to state a claim under §1985. *Brawer v. Horowitz,* 535 F.2d 830, 841 (3d Cir. 1976).  Moreover, §1986 carries with it a one-year statute of limitations. 42 U.S.C. § 1986.  Thus, any alleged acts attributed to Defendants occurring before January 18, 2020 are barred.  All conspiracy claims must be dismissed.

**10. Pennsylvania Constitutional Claims – No Private Right of Action**

Counts 15, 16 and 17 allege violations of the Pennsylvania Constitution for which Plaintiffs seek monetary damages.  There is no private right of action for monetary damages under the Pennsylvania Constitution.  "Pennsylvania does not recognize a private right of action for damages in a suit alleging violation of the Pennsylvania Constitution." *Gary v. Braddock Cemetery,* 517 F.3d 195, n. 4 (3d. Cir. 2008); *Underwood v. Beaver County Children and Youth Services,* No. 03-1475,

2007 WL 3034069, *2 (W.D. Pa. 2007) (In granting motion to dismiss, "Pennsylvania law does not include a statutory equivalent to 42 U.S.C. § 1983, which provides a cause of action for damages because of a federal constitutional claim."). The Pennsylvania constitutional claims are not viable.

**11. State Claims – Immunity Under Tort Claims Act**

The remaining counts, 17 through 31 in the Amended Complaint, are pendant state tort claims. Pennsylvania law applies to these claims. All but Count 30 are directed to some component of the Allegheny County Defendants. Allegheny County is a political subdivision of the Commonwealth of Pennsylvania. It is entitled to the privileges and protections of the Political Subdivision Tort Claims Act ("Tort Claims Act"). 42 Pa.C.S.A. §§ 8541-8564. Under the Tort Claims Act, Allegheny County is generally immune from suit. The County may be held liable only for underlined negligent acts, and those acts must fit within the following parameters:

1. There exists either a statutory or common law cause of action that would hold the County liable but for the Tort Claims Act. 42 Pa. C.S.A. § 8542(a)(1);

2. A County employee's action or inaction caused the plaintiff's harm. 42 Pa. C.S.A. § 8542(a)(2); and,

3. This action/inaction falls within one of eight categories. 42 Pa. C.S.A. § 8542(a)(2) and (b)(1-9).

The Tort Claims Act must be narrowly construed in favor of insulating the County from liability. *Mascaro v. Youth Study Center,* 523 A.2d 1118 (Pa. 1987). Allegheny County's employees are blanketed with the same limitations of liability that Allegheny County receives. 42 Pa.C.S.A. § 8545. Every one of the pendant state counts Plaintiffs have brought against Allegheny County and/or its employees fail because of this grant of immunity. Additionally, the individual County Defendants are further cloaked with quasi-judicial immunity in that their actions as part of their duties as caseworkers acting under the authority and direction of the court as well as in their capacity as witnesses. See section on absolute immunity *supra*. *See also Bochetto . v. Gibson,* 860 A.2d 67, 71 (Pa.2004); 23 Pa.C.S.A. § 6318; Restatement 2d of Torts § 588 (1977). Counts 17-31 must be dismissed with prejudice.

In addition to the defense of Tort Claims Act Immunity, the following five pendant claims must be dismissed for additional reasons.

i. *Intentional Infliction of Emotional Distress*

The Intentional Infliction of Emotional Distress Claim (Count 19) also fails because Pennsylvania has never adopted this tort as a viable cause of action. *Taylor v. Albert Einstein Medical Center*, 562 Pa. 176, 181 (2000) ("Although we have never expressly recognized a cause of action for intentional infliction of emotional distress, and thus have never formally adopted this section of the Restatement 2d of Torts §46.2 we have cited the section as setting forth the minimum elements necessary to sustain such a cause of action.")

If Pennsylvania recognized this cause of action, the standard is conduct that is so outrageous as to, "go beyond all possible bounds of decency," or is "utterly intolerable in a civilized community." *Abadie v. Riddle Memorial Hospital*, 589 A.2d 1143 (Pa. Super. Ct. 1991); *Reeves v. Middletown Athletic Ass'n*, 86 A.2d 115, 1122n. 5 (Pa. Super. Ct. 2004). That is a standard that is very high, and not met under the facts in Amended Complaint. The Intentional Infliction of Emotional Distress claim must be dismissed with prejudice.

ii. *Abuse of Power*

Count 24 alleges Abuse of Power. This is not a cause of action. Abuse of Power is not recognized in federal law. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 119, 112 S.Ct. 1061 (1992) ("Although the [§ 1983] statute provides the citizen with an effective remedy against those abuses of state power that violate federal law, it does not provide a remedy for abuses that do not violate federal law.") Allegheny County has found no applicable state law recognizing such a cause of action. Even if there were, the Allegheny County Defendants have immunity as there is no "abuse of power" exception in the Tort Claims Act. It must be dismissed with prejudice.

iii. *Wrongful Use of Civil Proceedings*

Count 25 is for Wrongful Use of Civil Proceedings. This is a Pennsylvania statutory claim. 42 Pa.C.S.A. § 8351 Plaintiffs factually do not satisfy its requirements. Plaintiffs' argue that the Allegheny County Defendants' initiating the family court action in which they are currently involved can be "Wrongful Use of Civil Proceedings." The statute requires that:

> 1. [the defendant] acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of

securing proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and,

2. the proceedings have terminated in favor of the person against whom they are brought.

42 Pa.C.S.A. § 8351.  Allegheny County could not find law that applies this statute to family court dependency cases.  Further, even if it did, Plaintiffs cannot satisfy either requirement.

The Family Court orders attached to the MOTION TO DISMISS show that the Family Court found cause to find the Minor Children dependent, remove the parents as legal guardians, and place the family into protective services.  When Mother appealed the Family Court's rulings to the Superior Court, she lost. This eliminates requirement one.  Requirement two cannot be satisfied either.  While the goals of Family Court and CYF are to work toward family reunification (until such time as the Family Court Judge determines that is no longer in the best interests of the child), Family Court, unlike a civil proceeding, is not static.  If Family Court proceedings eventually terminate with the family being reunited and protective services ending, that does not mean the original actions (of removal and intervention) were "wrongful."  Instead, it means the family's circumstances have changed and the family can now (hopefully) function properly without court and protective services.  This Wrongful Use of Civil Proceedings count has no applicability to a dependency case.  It should be dismissed with prejudice.

*iv.  Trespass*

Count 19 is for Trespass.  The facts do not support this claim.  Plaintiffs allege that the Allegheny County caseworker assigned to the case, "walked their property following a fire at Plaintiffs'' home." (ECF #10, ¶ 695.)  Pennsylvania law provides that a caseworker is authorized to arrive unannounced at a family's location and investigate the health and welfare of the children. 55 Pa. Code § 3490.232(f).  Plaintiffs admit there had been a fire at their home, it is logical and within reason for the assigned caseworker to investigate the situation.  This Count fails as matter of law and must be dismissed with prejudice.

*v.  Loss of Consortium*

Count 31 alleges Loss of Consortium.  Plaintiff Mother and Father appear to be bringing a

state tort claim for loss of consortium.  Such a claim can only be derivative of a viable tort claim. For the reasons set forth above, none of the tort claims are viable.  The loss of consortium claim must be dismissed with prejudice.

**12.  Punitive Damages not Available against Allegheny County**

Plaintiffs included a punitive damage claim with all 31 Counts in their Amended Complaint. Section 1983 does not allow for punitive damages against municipalities. *Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981).  The Tort Claims Act bars punitive damages for all the pendant state claims.  42 Pa.C.S.A. § 8553.  The punitive damage claims must be dismissed with prejudice.

**13.  Attorneys' Fees Not Recoverable**

Attorneys' fees are *not* recoverable in an action for negligence. *Centolanza v. Lehigh Valley Dairies, Inc.,* 635 A.2d 143, 145 (Pa. Super. Ct. 1993); *aff'd,* 658 A.2d 336 (Pa. 1995). Additionally, an attorney acting *pro se* is not entitled to fees under Civil Rights Attorney's Fees Awards Act.  42 U.S.C.A. § 1988; *Kay v. Ehrler,* 499 U.S. 432, 438 (1991).  An attorney acting *pro-se* on behalf of a child cannot claim attorney fees either.  *Woodside v. Sch. Dist.,* No. 99–cv 1830, 2000 U.S. Dist. LEXIS 568, at *4., 2000 WL 92096 (E.D.Pa. Jan. 27, 2000) (Holding father not entitled to attorney's fees for the work he performed on behalf of son.) Plaintiffs' claim for attorneys' fees must be stricken.

**14.  Arguments Made by Co-Defendants**

Allegheny County Defendants respectfully join in the well-reasoned arguments of the co-Defendants to the extent they are applicable to the Allegheny County Defendants.

### III.  CONCLUSION

Defendants respectfully request that this Honorable Court grant the MOTION TO DISMISS and dismiss the Amended Complaint in its entirety with prejudice.  Any attempt or request by Plaintiffs to amend the complaint a second time must be denied as futile since it is abundantly clear that the underlying actions upon which Plaintiffs rely are insufficient as a to support the claims asserted.

Respectfully submitted,

*/s/ Frances Marie Liebenguth*
Frances Marie Liebenguth
Assistant County Solicitor
Pa. I.D. #314845
(412) 350-1108
Frances.Liebenguth@alleghenycounty.us

*/s/ Virginia Spencer Scott*
Virginia Spencer Scott
Assistant County Solicitor
Pa I.D. # 61647
ALLEGHENY COUNTY LAW DEPARTMENT
445 Fort Pitt Blvd., Suite 300
Pittsburgh, PA 15219
(412) 350-1173
vscott@alleghenycounty.us